## CARSON v S H KRESS & CO

Ohio Appeals, 7th Dist, Mahoning Co

No 2350. Decided March 31, 1937

H. H. Hunt, Youngstown, and William A. Mason, Youngstown, for plaintiff-appellee.

Charles F. Scanlon, Akron, for defendant-appellant.

## OPINION

By NICHOLS, J.

This cause comes into this court on appeal of law from the judgment of the Common Pleas Court of Mahoning County, Ohio.

In her amended petition, Robertina Carson alleged that on April 6, 1934, at the hour of about 5:30 P. M., she entered the store of S. H. Kress and Company, located at 117 West Federal Street, Youngstown, for the purpose of making certain purchases, and at a point in the center aisle of the storeroom on the main or ground floor, a few feet from the main entrance, she slipped on the floor of the storeroom and fell violently and received certain injuries.

Plaintiff further alleged that the floor of defendant's storeroom, at the point where she slipped, was covered with oil and an oily preparation and was slippery, and that the oil or oily preparation was applied and/or maintained by the agents of defendant company in the course of their employment in a negligent and careless manner; that the oil or oily preparation or liquid was applied thickly and irregularly, and that at the point where plaintiff fell there was an excessive quantity of oil or oily liquid upon the floor, and that her foot slipped upon the oil or oily preparation, causing her to fall.

The petition does not so allege, but the answer admits that S. H. Kress and Company is a corporation. The answer further admits that the S. H. Kress Company operates a store as alleged in the amended petition; and further admits that the plaintiff received some injury, but denies that she was injured in the manner and form and to the extent alleged in her amended petition. The answer further denies that plaintiff fell or sustained any injuries as a proximate consequence of any negligence on the part of the defendant, and alleged that whatever injuries plaintiff sustained were caused solely and proximately by her own negligence.

Plaintiff's reply denied that the injuries of which she complains were sustained by her own negligence.

Upon these issues the parties went to trial, and at the close of plaintiff's evidence the defendant company moved that the case be arrested from the jury and a verdict directed for the company. The motion was overruled, and no evidence being presented on behalf of the defendant and the motion for directed verdict being renewed was again overruled. The jury returned a verdict in favor of plaintiff in the sum of $4,000.00.

It is the contention of appellant that there was a complete absence of testimony tending to sustain the allegations of plaintiff's amended petition; and that the trial court erred in overruling the motions of defendant for directed verdict. No other error is assigned for the consideration of this court.

It seems to be conceded that the amended petition of plaintiff states a good cause of action, but it is claimed in the brief of appellant that there was a complete absence of testimony tending to sustain the allegations of plaintiff's amended petition.

To determine the question presented, it is necessary to examine the record. The following is quoted from the testimony of plaintiff and her two daughters, being the only witnesses testifying in support of the claim of negligence upon the part of defendant. Isabelle Carson testified, in part, as follows:

"Q. What did you see?

A. I looked at the floor and it was quite oily.

Q. What did you notice with reference to the appearance of the floor?

A. It was oily.

Q. Was it wet or dry?

A. No, it was wet.

Q. When you say the floor was wet, do you refer to some particular, or do you refer to the entire aisle?

A. I refer to the whole floor.

Q. The whole aisle appeared the same?

A. Yes, sir.

Q. * * * Were there any marks on the floor, Miss Carson?

A. There was marks of her heel as she went down * * * like the scraping of the heel of the shoe * * * her heel was marked like oil or grease * * *.

COURT: What did you see there that night?

A. When I was going down the aisle there was a bucket.

Q. Was there anything in it, if you know?

A. There was a handle like a mop sticking in it. I did not notice what was in it. * * * It was just a stick sticking out of the bucket * * * on the left hand side. * * * On the corner of the left counter. * * * On the corner ahead of us.

Q. Was this aisle closed up in any way?

A. No sir."

On cross examination the witness testified that there were quite a few people in the store at different counters and walking up and down the same aisle whereon her mother fell; that she did not see anybody else fall there; that she did not get down and feel the floor; that the floor was wooden and had the appearance of being oily.

"Q. Did you see any porters or any men there cleaning the floor?

A. Yes, there was a colored man there, and there was a window dresser; he was standing at the other counter. * * * I didn't see the man doing anything at the time."

The witness further testified that the store was well-lighted and that it was not dark where her mother fell; that the floor was level and even; that there were no other people around the particular spot where her mother fell except one girl clerk; that the floor in the whole aisle was the same; and that there was no debris or refuse or gum on it, just the oil, "it was just cleaned up."

"Q. Of course, you don't know whether it was just cleaned up, do you?

A. No sir, the oil was freshly on it is all I know. I don't know, it was just freshly done; it looked that way anyhow.

Q. You didn't see anybody working there?

A. No sir."

Mrs. Homer, plaintiff's other daughter, testified that after her mother fell she reached down and picked her up; that she noticed "there was some kind of preparation on the floor, it looked like oil * * * all along over the entire aisle." That she noticed a bucket at the end of the counter with a stick in it having the appearance of a mop handle; that the floor was wet; that you could see the streak where her mother's heel went, a white streak; that a sort of oil was on her heel and on her hand; that her mother's heel and hand were wet with an oily substance.

On cross examination Mrs. Homer testified:

"Q. There was nothing on the floor in the way of paper or refuse?

A. No.

Q. It was clean?

A. Absolutely."

Mrs. Homer further testified that the store was well lighted and that she did not see anyone else fall.

The plaintiff testified as follows:

"Q. Now, tell the jury just what happened?

A. While I was walking along, I just stopped for only around a second and was on my left side when I came up I went on just as anybody would and my heel went from under me and I went down solid, and I screamed out.

Q. What did you notice, Mrs. Carson, about the condition of the floor?

A. The floor was oily and my hand was oily as I hit the floor.

Q. Well, was it wet?

A. Yes sir. * * * All the aisle was just the same, I guess."

Mrs. Carson further testified that the marks on her heel and the marks of herself were on the floor "there was most on me, oil from the floor, the oil from the floor was on my shoe." Plaintiff testified that she "saw a bucket at the end of the aisle * * * there was a mop stick in it." That she "talked to the manager as to the

oil on the floor."

After showing by the present manager of the store that a man by the name of "Nevergall" was manager at the time Mrs. Carson claims to have fallen therein, counsel for plaintiff propounded the following question to plaintiff:

"Q. Now, Mrs. Carson, I wish to ask you if you had some conversation with a man by the name of 'Nevergall,' who represented that he was manager of the store, following this accident?
A. Yes."

Counsel for plaintiff further inquired of plaintiff as follows:
"Q. I will ask you if that conversation had anything to do with the condition of the floor?
A. Yes.
Q. Now with reference to the time when you fell, when was this conversation; how long after?
A. When I was standing right on the spot.
Q. Well, how long after you had fallen was this conversation?
A. Just a few seconds to a minute.
Q. Did he represent to you that he was the manager of the store?
A. Yes.
Q. What was this conversation between you and Mr. Nevergall?"

To this question an objection was interposed on behalf of defendant and the objection being sustained, counsel for plaintiff stated that: "We expect the answer to be that she said to Mr. Nevergall that the floor had been just oiled, to which Mr. Nevergall replied that the preparation used was not oil, but a preparation which contained oil."

On cross examination Mrs. Carson testified that she did not see any rubbish or debris or any gum, or anything like that on the floor, that "the floor was all cleaned up." That when she got up she noticed on her hands "what felt and looked like a greasy substance which was all over the aisle; that the store was well lighted." Mrs. Carson testified that she had been in the store many times before and had never fallen and had never known of anyone who had fallen in the store; and that the oil was the only thing that caused her to slip on that day.

Is the testimony to which I have hereinbefore referred sufficient to establish a cause of action and warrant the court in overruling the motions for directed verdict?

In the recent case of **J. C. Penney Company, Inc. v Robinson, 128 Oh St 626,** it is set forth in the syllabus:

"1. A storekeeper owes to a customer shopping in his store, the duty to exercise ordinary care and have and keep his storeroom in a reasonably safe condition.

"2. While the oiling of floors in storerooms is by no means a universal practice, it is quite common, and it is not negligence per se to have an oiled floor in a storeroom, the duty on the part of the store keeper toward his customers in reference thereto being the exercise of ordinary care in the application of the oil to the floor, and the maintenance of the floor thereafter.

"3. The standard would be that degree of care which persons of ordinary care and prudence are accustomed to use in oiling the floor of a storeroom and maintaining such floor in its oiled condition, having due regard to the rights of others and the objects to be accomplished.

"4. In an action for personal injury, brought by a customer against a storekeeper, predicated upon the alleged negligence of the storekeeper in oiling and maintaining a floor in such a storeroom in a dangerous condition, it is not enough to produce testimony showing that the customer slipped and fell on an oiled floor in such storeroom. There must be testimony tending to show that some negligent act or omission of the storekeeper caused the customer to slip.

"5. Testimony to the effect that after the customer fell there was a mark on the floor where the customer's heel had slipped, that she had some oil or black substance on her hand, dress and stockings, and that the rubber tap had come off the heel of the customer's shoe in falling, affords no question for the jury. Considering such testimony in its most favorable light toward the customer, it constitutes no proof of negligence on the part of the store keeper.

"6. Under our law it is just as pernicious to submit a case to a jury and permit the jury to speculate with the rights of citizens when no question for the jury is involved, as to deny to a citizen his trial by jury when he has the right."

It is stated by counsel for appellant that the facts in the case of Penney, Inc. v Robinson, supra, are most nearly like the facts in this case, and it is urged that the decision in the Penney case is decisive of

the action here. Other cases are cited by counsel for appellant which seemingly place a burden upon one seeking to recover for damages as a result of slipping upon an oily floor to show negligence in the method of application of the oily substance or that the substance was not proper for the intended purpose. In view of the well established rule that a storekeeper owes to his customer the duty of furnishing a reasonably safe place and that the customer may rely upon the storekeeper performing his duty, and in view of the further fact that the character of the substance used and the method of its application are matters solely within the knowledge of the storekeeper, it seems proper to suggest that when the injured customer has shown by the evidence that the floor upon which she fell was "quite oily," was "wet" and slippery; that the oil was on the floor in such quantities as to wet plaintiff's hand and clothing and to show marks where plaintiff fell, considered in connection with the evidence tending to show that the store had been oiled immediately preceding the accident; that the colored porter was there on hand; that nearby was a bucket with what appeared to be a mop handle in it; that it was near the closing hour and the floor presented the appearance of just having been cleaned up, there being no refuse of any kind thereon, interpreted in accordance with the rule which required the court, in passing upon a motion for directed verdict, to give to the evidence the interpretation most favorable to plaintiff, presents a situation for the determination of the jury. It is common knowledge that store floors which have been treated with a suitable preparation which has been properly applied at a proper time are not "wet" and are not "quite oily" or "greasy."

While, as stated by the court in Penney, Inc. v Robinson, supra, it has become a quite common practice for storekeepers to oil their floors, it is well known that the preparation of floors in accordance with the prevailing practice is done at a time other than during business hours; that the character of the preparation used and the manner of its application, in common practice, are not such as to make the floors wet, oily, greasy and slippery at the time customers are invited into the store; and it seems quite apparent that if the preparation is applied at a time or in a manner that the same remain oily, wet, greasy and slippery when prospective customers are in the store at the invitation of the proprietor, reasonable minds may conclude that the storekeeper has been negligent either in the character of the preparation used or in the method of application, and that a situation has been presented enabling the jury to find for the plaintiff in the absence of any evidence upon the part of the storekeeper to rebut the implications arising from such condition. No evidence was offered by defendant in this case.

I think it proper to respectfully suggest that the storekeeper oils his floor not so much as a sanitary measure for the benefit of his customers as for his own benefit in allaying dust and the protection of his merchandise therefrom, and to keep his merchandise attractive and merchantable. The storekeeper receives the benefit therefrom, and I can see no reason why he should not bear the liability resulting from an injury to his customer who has been caused to fall by an oily, greasy substance of the character indicated in the testimony in this case.

I think the jury were entirely warranted in finding from the evidence in this case that the storekeeper had either applied the oily substance at an improper time or in excessive quantities, or that the substance itself was not suitable for the purposes intended; that the question of negligence of the defendant is one of fact for the jury under all these circumstances; and that this court would not be justified in disturbing the verdict rendered by the jury; that the evidence of the plaintiff was such that reasonable minds could reasonably arrive at the conclusion from the testimony offered on behalf of the plaintiff that the defendant was negligent in the respects claimed in the amended petition.

It follows that the trial court did not err in overruling the motions for directed verdict, and that the verdict is not manifestly against the weight of the evidence.

It is my conclusion that substantial justice has been done and that the judgment of the trial court should be affirmed.

CARTER, J, concurs.
ROBERTS, PJ, dissents.